1   WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9   Paul Renteria, et al.,                )    No. cv-07-00658-PHX-ROS
                                           )
10              Plaintiffs,                )    **ORDER**
                                           )
11  vs.                                    )
                                           )
12                                         )
    Kivalu Ramanlal, et al.,               )
13                                         )
                Defendants.                )
14                                         )
                                           )
15  _____

16

17          Pending before the Court are Defendants' Motion for Summary Judgment, to Dismiss,

18  and to Change Venue (Doc. 93) and Plaintiffs' Motion for Reopening of Discovery (Doc.

19  123).  For the reasons stated herein, Defendants' Motion will be denied.  Plaintiffs' Motion

    will be granted.

20
                                  I. BACKGROUND
21

22          Defendant MEI Corporation ("MEI") is a Hawai'i corporation with its principal place

23  of business in Hawai'i.  It is owned by Defendant Kivalu Ramanlal, a Hawai'i resident.

24  Plaintiff Paul Renteria is an Arizona resident and the founder and sole shareholder of Plaintiff

    South Bay EDC, Inc. ("South Bay"), a California corporation with its principal place of
25
    business in Arizona.
26
            After being introduced to Ramanlal, the two men entered into negotiations regarding
27
    Renteria's purchase of Preferred Constructors, Inc. ("PCI"), a company owned by Ramanlal.
28

1    Ultimately, they entered into an agreement, executed in late February of 2006, agreeing to

2    transfer all of Ramanlal's shares in PCI to Renteria.  Ramanlal negotiated and signed this

3    agreement from Hawai'i; Renteria, from Arizona.   After entering into the agreement, PCI

4    agreed to hire Ed Compton, a manager with South Bay, to lay the groundwork for its

5    consummation.  They also agreed to seek out opportunities for a joint venture between PCI

6    and South Bay.

7        Before the deal was consummated, the relationship between Plaintiffs and Defendants

8    turned sour.  PCI was unable to acquire a bond needed to compete for government contracts,

9    and South Bay transferred $50,000 to PCI for operating expenses when it ran short on cash.

10   Renteria and Compton then allegedly began to uncover discrepancies between Ramanlal's

11   representations and the realities of the financial and operating conditions of PCI that made

12   it clear to Renteria that PCI's value was substantially less than he had earlier believed.  He

13   also began to uncover what he believed were fraudulent acts committed by Ramanlal on the

14   Kahalu Water Improvements Project, work which used equipment allegedly represented as

15   belonging to PCI that was then transferred to an MEI job.  PCI, Plaintiffs allege, was

16   burdened with $120,000 in costs as a result of this transfer.

17       Renteria submitted a letter to Ramanlal withdrawing his offer to purchase PCI.

18   Plaintiffs now bring suit against Ramanlal, Ramanlal's spouse, and MEI asking for a

19   declaratory judgment rescinding the agreement.  They ask also for damages for breach of

20   contract, fraud, and fraudulent conveyance, and restitution for advances made to PCI.

21   Ronald K. Kotoshirodo has been appointed receiver for PCI; also pending before the Court,

22   but not addressed herein, is his Motion for Disbursement of Funds.  In his opinion, PCI is

23   currently  insolvent and unviable.

24                              II. PERSONAL JURISDICTION

25       Defendants contest this Court's ability to exercise in personam jurisdiction over them.

26   Under Fed. R. Civ. Proc. 4(k),  "[s]erving a summons or filing a waiver of service establishes

27   personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of

28   general jurisdiction in the state where the district court is located."  In Arizona, personal

jurisdiction is controlled through its long-arm statute, which "provides for personal jurisdiction co-extensive with the limits of federal due process." <u>Doe v. American Nat'l Red Cross</u>, 112 F.3d 1048, 1050 (9th Cir. 1997).  The statute "authorizes jurisdiction over Arizona residents, persons 'doing business in this state,' and persons who have 'caused an event to occur in this state out of which the claim which is the subject of the complaint arose . . . .'" <u>Batton v. Tennessee Farmers Mut. Ins. Co.</u>, 736 P.2d 2, 4 (Ariz. 1987).  "Due process requires that nonresident defendants have certain minimum contacts with the forum state, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." <u>Doe</u>, 112 F.3d at 1050 (citing <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945); Ariz. R. Civ. P. 4.1(a).  If a defendant's activities in a state are "'substantial' or 'continuous and systematic,' general jurisdiction may be asserted even if the cause of action is unrelated to those activities." <u>Haisten v. Grass Valley Med. Reimbursement Fund Ltd.</u>, 784 F.2d 1392, 1396 (9th Cir. 1986) (internal citations omitted). Plaintiffs here, however, make no argument that Defendants are subject to general jurisdiction.

The Ninth Circuit applies a three-part test to determine whether a court has specific jurisdiction over a defendant:

> (1) The nonresident Defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[;] (2) the claim must be one which arises out of or results from the defendant's forum-related activities[; and] (3) exercise of jurisdiction must be reasonable.

<u>Doe</u>, 112 F.3d at 1051 (quoting <u>Omeluk v. Langsten Slip & Batbyggeri A/S</u>, 52 F.3d 267, 270 (9th Cir. 1995)).

i. Purposeful Availment

"Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." <u>Shute v. Carnival Cruise Lines</u>, 897 F.2d 377, 381 (9th Cir. 1990) (citing <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 840 (9th Cir. 1986)).  A defendant may not "be haled

into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (citations and internal quotations omitted).  However, "a non-resident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business.  <u>Shute</u>, 897 F.2d at 381 (citing <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 840 (9th Cir. 1986) (stating "if the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws.")).

In one case, <u>Sinatra v. National Enquirer, Inc.</u>, 854 F.2d 1191 (9th Cir. 1988), a Swiss health clinic that used Plaintiff Frank Sinatra's name in its commercial materials, was found to have directed its activities at California in several ways, including:

> (1) the misappropriation of the value of Sinatra's name through interviews conducted in Switzerland between Clinic employees and Enquirer reporters, in which the Clinic supplied false information about Sinatra's treatment at the Clinic; (2) the Clinic's California advertising efforts to attract patients; and (3) the Clinic's knowledge of Sinatra's residence in California.  In addition, California [was] the situs of Sinatra's injury.

<u>Sinatra</u>, 854 F.2d at 1195.  Further, a significant percentage of the Clinic's clients were California residents and this "misappropriation [was] properly viewed as an event within a sequence of activities designed to use California markets for the defendant's benefit." <u>Id.</u> at 1195, 1197.  In turn, "an essential element of the tort misappropriation is the celebrity's right to control the use of the publicity value of his or her name," and "Sinatra conduct[ed] his business from California, he license[d] his name in California, and the center of his business [was] in California." <u>Id.</u> at 1197.

Similarly, courts have found personal jurisdiction where a defendant directed or introduced  tangible products into the forum state: "designing [a] product for the market in the forum State, advertising in the forum State, or marketing [a] product through a distributor who has agreed to serve as the sales agent in [a] forum state, [and] establishing channels for providing regular advice to customers in the forum State, " can also

1    constitute evidence of purposeful availment.  <u>Asahi Metal Indus. Co. v. Superior Court of</u>

2    <u>Solano County</u>, 480 U.S. 102, 112 (1987).  A cruise line that "advertised in the local

3    media, promoted its cruises through brochures sent to travel agents in that state, and paid

4    a commission on sales of cruises in that state" was also found to be purposefully availing

5    itself of the laws of the forum state.  <u>Shute</u>, 897 F.2d at 382.  In an age where "many

6    transactions take place solely by mail or wire across state lines," the fact that a defendant

7    has never "consummated" a transaction in the forum state is not dispositive.  <u>Id.</u>

8         Conversely, incidental or peripheral interaction with the state will not suffice.  The

9    Director of the FDA's Division of Blood and Blood Products could not be sued in Arizona

10   court for failing to ensure a blood supply free from the AIDS virus after the plaintiff's

11   husband died as a result of a blood transaction he obtained at an Arizona hospital.  The

12   Ninth Circuit found that he "was only peripherally involved in the dissemination of blood

13   products into Arizona" and that he "did not promote the transaction of business and his

14   contacts were, at best, attenuated."  <u>Doe</u>, 112 F.3d at 1051.

15        Here, Defendants sole contact with Arizona seems to be through their negotiations

16   with Plaintiffs, Arizona residents, while Plaintiffs were located in Arizona.  The

17   complaint states only that "[i]n mid 2005, Renteria was introduced to Ramanlal by Sid

18   Pehrson," providing no evidence that Plaintiffs were solicited or contacted at their

19   Arizona address.  It then states vaguely that "Renteria and Ramanlal discussed a potential

20   business relationship and, over time, began negotiating for Renteria to purchase

21   Ramanlal's stock in PCI."  Plaintiffs' Statement of Facts alleges that "Renteria negotiated

22   the terms of the Joint Venture on South Bay's behalf when he was living in Arizona."  On

23   the one hand, the lack of solicitation in Arizona seems to distinguish this case from most

24   personal jurisdiction precedent.  However, while Defendants' contacts with Arizona may

25   seem scanty, Defendants engaged in extensive commercial negotiations with parties in the

26   forum state.  This falls within the realm of contacts sufficient to ground personal

27   jurisdiction.  This is particularly true here as Defendants contracted to sell a business to

28   an Arizona firm that would, then, presumably manage its activities from Arizona.

1 Moreover, as Plaintiffs are Arizona citizens and base their business and financial interests

2 in Arizona, Arizona was the site of the alleged injury to those itnerests.  Thus, Defendants

3 purposefully availed themselves of the privileges of conducting business in Arizona.

4                ii. Causal Connection

5        A "nexus" must exist "between a defendant's activities in the forum state and a

6 plaintiff's cause of action."  Williams v. Lakeview Co., 13 P.3d 280, 283 (Ariz. 2000).

7 The Arizona Supreme Court has held that "absent a causal connection between the

8 [Nevada] casino's Arizona contacts and the plaintiff's claims [arising out of liquor served

9 to an intoxicated patron], specific jurisdiction does not attach." Id. at 281.  The casino in

10 question in Williams, for instance, advertised buffet dinners in Arizona newspapers, "sent

11 a one-time offer to eleven tour bus companies that operated throughout Arizona, offering

12 them incentives to stop at the casino on their way into Nevada," employed Arizona

13 residents, was located close to the border, and routinely serviced Arizona residents.  Id. at

14 283.  However,

15             the plaintiffs [did] not assert that their visit to the casino resulted from any
             of Lakeview's contacts with Arizona.  They did not visit the casino after
16           seeing or in response to an advertisement, and they never traveled to
             Nevada on a tour bus.  Their injuries did not arise out of or relate to
17           Lakeview's employment relationship with or hotel service to Arizona
             residents.  The failure to show any  causal connection between Lakeview's
18           Arizona activity and their claim [was] fatal to the plaintiff's argument.

19 Id. at 283-84.  In the Ninth Circuit, this required causal connection takes the form of a

20 "but for" test – the plaintiff's injury must not have occurred "but for" the defendant's

21 activities in the forum state.  Id.; Shute, 897 F.2d at 385.

22        The causal connection test is satisfied here.  But for Defendants' negotiations with

23 Plaintiffs in Arizona, the ill-fated business deal, and Plaintiffs' alleged injury, would not

24 have occurred.

25                iii.  Reasonableness

26        "Once purposeful availment has been established, the forum's exercise of

27 jurisdiction is presumptively reasonable." Shute, 897 F.2d at 386.  Rebutting this

28 presumption requires  that the defendant "present a compelling case" that the exercise of

jurisdiction would be unreasonable.  <u>Burger King Corp.</u>, 471 U.S. 462, 477 (1985).  The

Ninth Circuit has laid out seven factors that must be balanced to determine

reasonableness:

> the extent of purposeful interjection; the burden on the defendant to defend
> the suit in the chosen forum; the extent of conflict with the sovereignty of
> the defendant's state; the forum state's interest in the dispute; the most
> efficient forum for judicial resolution of the dispute; the importance of the
> chosen forum to the plaintiff's interest in convenient and effective relief;
> and the existence of an alternative forum.

<u>Shute</u>, 897 F.2d at 386 (citing <u>Federal Deposit Ins. Corp. v. British-American Ins. Co.,
Ltd.,</u>( 828 F.2d 1439, 1442 (9th Cir. 1987) (hereafter, <u>FDIC</u>)).

   First, "purposeful interjection" is no longer given weight once purposeful

availment is established.  <u>Shute</u>, 897 at 386.  Second, while it may indeed be more

convenient for Defendants to litigate this suit in Hawai'i, Defendants have not made any

showing of exceptional hardship.  Further, the court must "examine the burden on the

defendant in light of the corresponding burden on the plaintiff."  <u>Sinatra</u>, 854 F.2d at

1199.  There is no indication that it would be any easier for Plaintiffs to litigate in Hawai'i

than it is for Defendants to defend in Arizona.  Third, when Defendant is citizen of

another state (as opposed to a foreign country), "choice-of-law rules, rather than

jurisdictional rules, are more appropriate to accommodate conflicting sovereignty

interests."  <u>Shute</u>, 897 F.2d at 387 (citing <u>Hirsch v. Blue Cross, Blue Shield</u>, 800 F.2d

1474, 1482 (9th Cir. 1986).  These three factors, then, weigh towards a finding that the

exercise of jurisdiction is reasonable.

   Fourth, Arizona might be interested in this lawsuit for several reasons.  First, a

state has an interest in protecting its citizens from tortious acts.  <u>Cubbage v. Merchant</u>,

744 F.2d 665, 671 (9th Cir. 1984).  Plaintiffs allege Defendants engaged in fraud and

fraudulent conveyance, torts against which Arizona has an interest in protecting its

citizens.  A state's interest is also strong where the forum state's law governs the dispute

or where it concerns a commercial activity subject to regulation in the forum state. <u>FDIC</u>,

1    828 F.2d at 1444. Assuming, *arguendo*, that Hawai'i law governs the transaction, Hawai'i,

2    too, has an interest in adjudicating the case.

3         Fifth, it seems likely that Hawai'i is the most efficient forum in which to resolve

4    the dispute.  Defendant Ramanlal resides there, as does MEI.  Further, PCI was

5    incorporated there, had its office there, and did all of its business there.  However, as

6    Plaintiffs are located in Arizona, Hawai'i is not more efficient in all respects.

7         Sixth, Arizona is certainly the most convenient forum for the Plaintiffs, who are

8    based there.  Plaintiff has, not, however made a showing that dismissal of this suit from

9    Arizona would prevent them from litigating, therefore this factor does not weight heavily.

10   Shute, 897 F.2d at 387 (citing Hirsch, 800 F.2d at 1481).

11        Seventh, Defendant argues that Hawai'i is an acceptable alternate forum and

12   Plaintiffs do not dispute this.

13        Ultimately, most of the reasonableness factors are neutral or equivocal, or else

14   weigh towards Plaintiffs outright.  Defendants, therefore, have not met their burden of

15   showing unreasonableness.  Accordingly, this Court will exercise personal jurisdiction

16   over Defendants.

III.  VENUE

18        Defendants contest that the District of Arizona is a proper forum for this case and,

19   in the alternative, argue that, even should it be proper, the Court should transfer venue to

20   the District of Hawai'i.  The United States Code provides that "[a] civil action wherein

21   jurisdiction is founded only on diversity of citizenship" may be brought only in:

22       (1) a judicial district where any defendant resides, if all defendants reside in
         the same State,
23       (2) a judicial district in which a substantial part of the events or omissions
         giving rise to the claim occurred, or a substantial part of property that is the
24       subject of the action is situated, or
         (3) a judicial district in which any defendant is subject to personal
25       jurisdiction at the time the action is commenced, if there is no district in
         which the action may otherwise be brought.
26
27   28 U.S.C. § 1391(a).  While a corporate defendant is "deemed to reside in any judicial

28   district in which it is subject to personal jurisdiction at the time the action is commenced,"

- 8 -

1  28 U.S.C. § 1391(c), Defendant Ramanlal is a resident of Hawai'i.  Therefore, venue in

2  Arizona must be proper under subsection (2), or subsection (3) if no district is proper

3  under subsection (2).  To be proper, a forum "need not be the best venue, only a

4  qualifying venue."  Silver Valley Partners, L.L.C. v. DeMotte, 400 F. Supp. 2d 1262,

5  1269 (W.D. Wash. 2005) (citing Cottman Transmission Sys. v. Martino, 36 F.3d 291, 294

6  (3d Cir. 1994); Bates v. C&S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992)).

7         The "events or omissions" inquiry focuses on "relevant activities of the defendant,

8  not of the plaintiff."  Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995); see also LeRoy

9  v. Great W. United Corp., 443 U.S. 173, 183-84 (1979) (explaining "[i]n most instances,

10  the purpose of statutorily specified venue is to protect the defendant against the risk that a

11  plaintiff will select an unfair or inconvenient place of trial.").  District courts are to take

12  the word "substantial" seriously; "for venue to be proper, significant events or omissions

13  material to the plaintiff's claim must have occurred in the district in question, even if other

14  material events occurred elsewhere."  Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357

15  (2d, Cir. 2005).  "Substantiality is intended to preserve the element of fairness so that a

16  defendant is not haled into a remote district having no real relationship to the dispute."

17  Cottman Transmission Sys. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).  The court

18  "should review the entire sequence of the claim in examining venue," but "[e]vents or

19  omissions that might only have some tangential connection with, or no real relationship

20  to, the claims in litigation are not sufficiently 'substantial' to support venue."  Kelly v.

21  Qualitest Pharms, Inc., 2006 U.S. Dist. Lexis 65814, 26 (E.D. Cal. 2006).  In a tort action,

22  the place where the harm occurred is relevant to determining venue.  Myers v. Bennett

23  Law Offices, 238 F.3d 1068, 1075-76 (9th Cir. 2001).  Several courts have held, however,

24  that the venue inquiry requires a more stringent inquiry than does personal jurisdiction.

25  See Jenkins Brick Co. v. Brenner, 321 F.3d 1366, 1372 (11th Cir. 2006); Cottman, 36

26  F.3d at 294; Gulf Ins., 417 F.3d at 357.

27         While it may indeed be correct to say that Hawai'i was the district where the most

28  significant events or omissions occurred, Renteria was resident in Arizona at all times

1  relevant to the case, including when he negotiated and executed the agreement at issue.

2  While incorporated in California, South Bay is headquartered in Arizona.  Further, any

3  financial injury suffered by Plaintiffs was suffered in Arizona where their business and

4  finances are located.  Finally, throughout the negotiations, Defendants were well aware

5  that they were entering into business deals with parties centered in Arizona.  It is, not,

6  then, unfair that they be haled into court there. Arizona is a proper forum.

7  In the alternative, Defendants argue that venue should be transferred to Hawai'i,

8  the more convenient forum.  The U.S. Code provides that:

9  For the convenience of the parties and witnesses, in the interest of justice, a
   district court may transfer any civil action to any other district or division
10  where it might have been brought.

11  28 U.S.C. § 1404(a).  The "Supreme Court has held that transfer under the statute is

12  limited to those situations in which the transferee district is one in which the action might

13  originally have been brought in terms of jurisdiction and venue." WRIGHT & MILLER,

14  FEDERAL PRACTICE & PROCEDURE § 1352; Hoffman v. Blaski, 363 U.S. 335 (1960).

15  There is no question that Hawai'i – in which Defendants are resident – would have been

16  proper as an initial forum.  District courts then have discretion "to adjudicate motions for

17  transfer according to an individualized, case-by-case consideration of convenience and

18  fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (quoting

19  Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (internal citation and quotation

20  omitted)).  Defendants have the burden of demonstrating that their preferred forum is

21  more appropriate.  Id.  The court may consider, among other factors:

22  (1) the location where the relevant agreements were negotiated and
    executed, (2) the state that is most familiar with the governing law, (3) the
23  plaintiff's choice of forum, (4) the respective parties' contacts with the
    forum, (5) the contacts relating to the plaintiff's cause of action in the
24  chosen forum, (6) the differences in the costs of litigation in the two
    forums, (7) the availability of compulsory process to compel attendance of
25  unwilling non-party witnesses, and (8) the ease of access to sources of
    proof.
26
   Jones, 211 F.3d at 495; Stewart, 487 U.S. at 29.
27

28

1   Here, the relevant agreements were negotiated and executed in both Arizona and
2   Hawai'i; this factor weights neutrally.  Similarly, Defendants have made no argument that
3   Hawai'i has better process to compel attendance of unwilling non-party witnesses or that
4   the cost of litigation in Hawai'i would be substantially lower.  Neither party has argued
5   that Arizona and Hawai'i law differ in a material respect that might make one forum better
6   suited to interpret the law at issue.  That Plaintiffs chose to bring their suit in Arizona also
7   weights in their favor.  It does seem likely, given that the work of PCI was done in
8   Hawai'i, that the parties on balance have more contacts there and that access to sources of
9   proof is easier.   However, Defendants have failed to meet their burden of demonstrating
10  that the forum is more appropriate.  Their arguments are centered solely around Plaintiffs'
11  contacts with Hawai'i and they make no argument regarding the availability of proof or
12  the convenience of witnesses besides noting that "all of the witnesses (save Plaintiffs) are
13  in Hawaii or, possibly California" and that "[a]ll of the personnel of PCI, prior to the sale
14  in February 2006, are located in Hawaii."  Without a specific demonstration of
15  inconvenience that will result through litigation in Arizona, this is an insufficiently vague
16  showing.  Further, the action has been pending before this Court for two years; it is
17  judicially more efficient to keep it here. This action, then, will remain in the District of
18  Arizona.

19                    IV.  DEFENDANT JANE DOE RAMANLAL

20  Defendants argue that the defendant identified in the complaint as "Jane Doe"
21  Ramanlal should be dismissed because "[t]he deadline to identify her through an
22  amendment has passed."  Plaintiffs argue in turn that the complaint was not amended
23  because Defendants failed to disclose her name in discovery despite being required to do
24  so under Fed. R. Civ. P. 26.

25  Rule 15(a)(2) states that the "court should freely give leave" to amend the
26  complaint "when justice so requires."  Fed. R. Civ. P. 15.  Defendants argue that Jane
27  Doe's identity need not be disclosed under Rule 26 because "there are no allegations in
28  the Complaint against, or involving, the 'Doe' defendant."  However, as Plaintiffs note,

1   her inclusion in the Complaint was "predicated on the benefits that the Ramanlal

2   communal estate had received as a result of Defendants' bad acts."  The Complaint

3   includes a cause of action for quantum meruit that argues "unjust enrichment."  It is

4   reasonable to assume that if Defendant Ramanlal is unjustly enriched, the marital estate is

5   likewise unjustly enriched.  Because her husband is named in the suit and she is identified

6   as his spouse, and because the claims against her arise solely out of the potentially

7   improper benefits gained from her marital relationship with Defendant Kivalu Ramanlal,

8   she must be aware of the claims against her as a matter of due process.  The Court, then,

9   feels it is unnecessary to hold Plaintiffs to the original deadline for amendment of the

10  Complaint and will entertain a motion to amend once Defendants disclose the party's

11  proper name.

12                    V.  MOTION FOR PARTIAL SUMMARY JUDGMENT

13       Defendants argue that the Court should grant summary judgment on Plaintiff's

14  sixth cause of action – Fraudulent Transfer.

15       i. Standard of Review

16       A court must grant summary judgment if the pleadings and supporting documents,

17  viewed in the light most favorable to the non-moving party, "show that there is no

18  genuine issue as to any material fact and that the moving party is entitled to a judgment as

19  a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317,

20  322-23 (1986).  Substantive law determines which facts are material, and "[o]nly disputes

21  over facts that might affect the outcome of the suit under the governing law will properly

22  preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S.

23  242, 248 (1986).  In addition, the dispute must be genuine, that is, "the evidence is such

24  that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477

25  U.S. at 248.

26       Furthermore, the party opposing summary judgment "may not rest upon the mere

27  allegations or denials of [the party's] pleading, but . . . must set forth specific facts

28  showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see Matsushita Elec.

1   Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  There is no issue

2   for trial unless there is sufficient evidence favoring the non-moving party; "[i]f the

3   evidence is merely colorable, or is not significantly probative, summary judgment may be

4   granted."  Anderson, 477 U.S. at 249-50 (citations omitted).  However, "[c]redibility

5   determinations, the weighing of the evidence, and the drawing of legitimate inferences

6   from the facts are jury functions, not those of a judge."  Id. at 255.  Therefore, "[t]he

7   evidence of the non-movant is to be believed, and all justifiable inferences are to be

8   drawn in his favor" at the summary judgment stage.  Id.

9           ii. Choice of Law

10          Courts need not determine choice of law in the absence of a potential conflict of

11  laws.  Mumblow v. Monroe Broad, Inc., 401 F.3d 616, 620 (5th Cir. 2005).  While it is at

12  this point unclear whether Arizona or Hawai'i law is applicable, both Arizona and Hawai'i

13  have adopted the Uniform Fraudulent Transfer Act.  H.R.S. § 651C-4; A.R.S. § 44-1004.

14  Therefore, the Court does not need to determine which forum's laws apply at the present

15  time.

16          iii. Analysis

17          Plaintiff's sixth cause of action alleges that "Plaintiffs are informed and believe

18  that Ramanlal has caused PCI to convey certain of its assets to himself personally, and/or

19  to MEI (the 'Transfers')," and that "the Transfers were accomplished with actual intent to

20  hinder, delay or defraud creditors of PCI."  In the alternative, Plaintiffs allege that "the

21  Transfers were accomplished without PCI receiving a reasonably equivalent value in

22  exchange, and PCI:

23          a. Was engaged or about to engage in a business transaction for which the
            remaining assets of PCI were unreasonable [sic] small in relation to the
24          business or transaction; or

25          b. Intended to incur, or believed or reasonably believed or reasonably
            should have believed that PCI would incur, [sic] debts beyond PCI's ability
26          to pay as they became due.

27  Defendants object on the ground that "no assets of PCI were ever transferred to MEI,"

28  and without such a transfer, "the claim lacks an essential prerequisite."  Plaintiffs, for

- 13 -

1   their part, point to documents uncovered during discovery that indicate "the existence of

2   secret accounts in the name of PCI" that "appear to have been actively used by Ramanlal

3   for his personal benefit and for the benefit of MEI."

4          The Uniform Fraudulent Transfers Act provides that a transfer made or obligation

5   incurred is fraudulent where it is made "With actual intent to hinder, delay, or defraud any

6   creditor of the debtor," whether the "creditor's claim arose before or after the transfer was

7   made or the obligation was incurred." H.R.S. § 651C-4; A.R.S. § 44-1004.  Defendants

8   denied having made any transfers between MEI and PCI.  Plaintiffs, however, have

9   provided account statements from the Bank of Hawaii showing bank accounts  in PCI's

10  name.  These accounts were allegedly uncovered only during discovery and previously

11  unknown to Plaintiffs, though the agreement meant they should have been fully informed

12  of PCI's financial status.  Plaintiff's App. C, Ex. 1.  A statement for one of these accounts

13  shows four deposits with a handwritten note reading "MEI's charges" scrawled next to

14  them; Plaintiffs allege, and Defendants do not dispute, that this is in Defendant

15  Ramanlal's handwriting.  Plaintiffs also point to a Check Request Form from MEI that

16  requests checks payable to PCI for "Equipment," "Life Insurance," and "House," among

17  other things.  Id.  Plaintiffs conclude that the evidence "shows MEI's benefiting [sic] from

18  the credit assets of PCI, and then repaying that benefit into a secret account where, upon

19  information and belief, PCI proper would not have access to it."

20         Defendants sole argument is the formulaic recitation of the assertion that no

21  transfer occurred.  To this end, they point to their one-word interrogatory response that

22  denies that any transfer occurred.  They do not, however provide any alternative

23  explanation for the bank accounts and checks discovered by Plaintiffs or, in fact, mention

24  the accounts at all.[1]  Plaintiffs' proposed explanation is plausible given the evidence

25

26         [1]  Defendants do address the existence of these bank accounts in their Response to
    Plaintiffs' Motion for Reopening Discovery (Doc. 131), stating – but not providing
27  admissible evidence in support – that Plaintiffs did know about the bank accounts and that
28  the money deposited was "either Ramanlal's own personal funds or the funds of MEI," and

1   presented.  Thus, there is a genuine issue of material fact as to whether a fraudulent

2   transfer occurred.  The claim, then, stands.

3                                    VI.  REOPENING OF DISCOVERY

4           Plaintiffs argue that discovery should be reopened to allow them to fully depose

5   witnesses and otherwise take advantage of information learned late in the discovery

6   process.  They ask for an initial period of 45 days during which they "intend to propound

7   additional written discovery and requests for production upon Defendants," issue

8   subpoenas for production to third parties, and notice the depositions of witnesses.  They

9   also ask for a hearing to review the progress of discovery and grant additional time at the

10  end of that period, if needed.

11          As noted in the Court's Order Granting Motion for Sanctions Against Defendants

12  (Doc. 106), Defendants were inexcusably tardy in producing their discovery responses.

13  Nor have they demonstrated that any prejudice to them would result from reopening

14  discovery, or that Plaintiffs failed to act with reasonable diligence.  As a result, discovery

15  shall be reopened for a period of 45 days.  Plaintiffs may ask by Motion for that period to

16  be extended to a period not exceeding 60 days should it be necessary; the Court will grant

17  such a request only should there appear to be compelling need.  Should the parties fail to

18  comply with the Federal Rules and this Court's Orders on discovery, sanctions will be

19  imposed up to and including default and dismissal under Rule 37(b).

20          Accordingly,

21

22

23  _____

24  done "in order to make sure that there were sufficient funds in these accounts to make the
    automatic monthly payments for the assets that were excluded from the sale of PCI."

25  Plaintiffs respond (Doc. 132) by reiterating that they were not in possession of information
    about the accounts.  They also provide evidence that the Receiver appointed in this case was

26  also  not aware of these accounts, and there was activity in one of the accounts after the
    Receiver was appointed.  Even assuming, *arguendo*, that information presented in the

27  Response to the Motion for Reopening Discovery should be considered for purposes of

28  ruling on the Motion for Summary Judgment, a genuine issue of material fact remains.

1    **IT IS ORDERED** Defendants' Motion for Summary Judgment, to Dismiss, and to
2    Change Venue (Doc. 93) is **DENIED**.
3    **IT IS FURTHER ORDERED** Plaintiffs' Motion for Reopening of Discovery
4    (Doc. 123) is **GRANTED**.  Discovery shall be reopened for a period of 45 days from the
5    date of this Order.
6    **IT IS FURTHER ORDERED** the parties shall submit an Amended Rule 16
7    Scheduling Order consistent with this Order.
8    DATED this 9th day of January, 2009.
9
10
11
12
13
14
15
16
17    _____
      Roslyn O. Silver
18    United States District Judge
19
20
21
22
23
24
25
26
27
28